IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BARBARA J. B., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 21-CV-218-JFJ |
| ) | |
| KILOLO KIJAKAZI,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Plaintiff Barbara J. B. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for disability benefits under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i). In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge. For the reasons explained below, the Court **AFFIRMS** the Commissioner's decision denying benefits. Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

**I.    General Legal Standards and Standard of Review**

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic

---

[1] Effective July 9, 2021, pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a). A plaintiff is disabled under the Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. § 404.1520; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v). If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the national economy. *Williams*, 844 F.2d at 751. "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary." *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence. *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005). Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.* A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence. *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.     Procedural History and the ALJ's Decision

On March 22, 2019, Plaintiff, then a 50-year-old female, applied for Title II disability insurance benefits.[2] R. 12, 47, 174-75. Plaintiff alleges that she has been unable to work since an amended onset date of August 7, 2018, due to Hashimoto's disease, reactive airway disease, asthma, thyroid nodules, chronic lymphedema, chronic fatigue, chronic insomnia, sleep apnea, chronic liver disease, and hypertension. R. 12, 44, 46, 211. Plaintiff's claim for benefits was denied initially and on reconsideration. R. 74-109. Plaintiff then requested a hearing before an ALJ. R. 125-26. ALJ Laura Roberts conducted an administrative hearing and issued a decision on November 27, 2020, denying benefits and finding Plaintiff not disabled. R. 12-33, 39-73. The

---

[2] Plaintiff later filed an application for Title XVI supplemental security income benefits in June 2020, but the ALJ did not elevate her subsequent application to the hearing level. R. 12-13, 43, 178-88.

Appeals Council denied review, and the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. R. 1-6; 20 C.F.R. § 404.981.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her amended onset date of August 7, 2018. R. 15. At step two, the ALJ found Plaintiff's obstructive sleep apnea, coronary artery disease, nonalcoholic steatohepatitis hypothyroidism with thyroid nodules, chronic fatigue syndrome, metabolic syndrome, obesity, major depressive disorder, anxiety disorder, and posttraumatic stress disorder ("PTSD") were severe impairments. *Id*. At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. R. 15-22.

The ALJ then summarized Plaintiff's hearing testimony, the medical source opinion evidence, and the medical evidence in the record. R. 22-31. She found Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with the following non-exertional limitations:

> The claimant is unable to climb ladders, ropes or scaffolds. The claimant is unable to perform work requiring exposure to unprotected heights. The claimant is able to perform work requiring occasional exposure to dust, fumes, odors, gases, and other pulmonary irritants. The claimant is unable to perform work requiring exposure to extreme hot temperatures (over ninety degrees), extreme cold temperatures (under thirty degrees), or excessive humidity (over eighty percent). The claimant is able to understand, remember, and carry out simple and detailed, but not complex tasks (Specific vocational preparation (SVP) of one to four). The claimant is able to perform work requiring occasional interaction with coworkers and the general public. The claimant will be off task no more than ten percent of the workday.

R. 22. At step four, the ALJ concluded that Plaintiff could not return to her past relevant work. R. 31-32. Based on the testimony of a vocational expert ("VE"), however, the ALJ concluded at step five that Plaintiff could perform other occupations existing in significant numbers in the national economy, including data entry operator, insurance clerk, and file clerk II. R. 32-33. The ALJ determined the VE's testimony was consistent with the information contained in the

Dictionary of Occupational Titles ("DOT"). R. 33. Accordingly, the ALJ concluded Plaintiff was not disabled. *Id*.

## III. Issues

Plaintiff raises two allegations of error on appeal: (1) the ALJ failed to properly evaluate Plaintiff's obesity, and (2) the ALJ's RFC limitation that Plaintiff would be off task no more than ten percent of the workday is not based on substantial evidence. ECF No. 14.

## IV. Analysis

### A. ALJ Properly Considered Plaintiff's Obesity

Plaintiff argues the ALJ did not provide an adequate analysis of the effects that Plaintiff's obesity had on the RFC assessment. An ALJ is required to consider the limiting effects of obesity as part of the RFC determination. *See* Social Security Ruling ("SSR") 19-2p, 2019 WL 2374244, at *4 (May 20, 2019). Obesity may affect a claimant's exertional, postural, and manipulative functions, environmental tolerance, and ability to sustain work activity. *Id*. "Obesity in combination with another impairment(s) may or may not increase the severity or functional limitations of the other impairment." *Id.* at *2. Thus, the ALJ should "not make general assumptions about the severity or functional effects of obesity combined with another impairment(s)," but rather should "evaluate each case based on the information in the case record." *Id.* at *4. Nonetheless, the obesity consideration may be "subsumed within the discussion of [a claimant's] other medical conditions." *Razo v. Colvin*, 663 F. App'x 710, 716 (10th Cir. 2016).

Obesity is considered at each step of the sequential evaluation process. SSR 19-2p at *2. Consistent with this guidance, the ALJ considered Plaintiff's obesity throughout her decision. The ALJ identified Plaintiff's obesity as a severe impairment at step two. R. 15. At step three, the ALJ evaluated Plaintiff's obesity under SSR 19-2p and concluded that the totality of evidence did not show that the functional effects of Plaintiff's obesity combined with her other impairments met

5

or equaled a listing. R. 20. In the RFC discussion, the ALJ thoroughly summarized Plaintiff's testimony and the medical evidence, including Plaintiff's height, weight, and morbid obesity diagnosis. R. 22-31. The ALJ specifically discussed Plaintiff's October 2018 consultation with Dr. V. Thomas Smith and found it did not support functional limitations that exceeded the RFC. R. 26, 336-39. In making this finding, the ALJ noted Plaintiff's report of "weight gain over the years," as well as the results of a pulmonary function test performed that day which were consistent with "mild obstruction and restriction, likely secondary to her obesity." R. 26. The ALJ then adopted the state agency physicians' opinion that Plaintiff could perform light work with no concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. R. 30, 84-86, 102-05. However, the ALJ also included a climbing limitation and additional environmental limitations in the RFC. R. 30. The ALJ explained she found Plaintiff more limited because the state agency physicians did not personally examine Plaintiff, did not have any of the diagnostic testing, and did not have the medical evidence received after they issued their opinions. *Id.*

Plaintiff specifically asserts the ALJ did not comply with the requirement in SSR 19-2p to explain "how [she] reached [her] conclusion on whether obesity causes any limitations." ECF No. 14. The Court disagrees. As set forth above, the ALJ explained that Plaintiff's "mild obstruction and restriction, likely secondary to her obesity" did not support additional functional limitations in the RFC. R. 26. Furthermore, the ALJ relied on the state agency physicians' opinions as support for her RFC, and both physicians *also* clearly considered Plaintiff's obesity. The state agency physicians referenced Plaintiff's height, weight, and body mass index ("BMI"), and explained that "[p]ain, BMI, treatment, prescriptions, and ADL's are all considered in this RFC and do not further limit." R. 30, 75, 86, 91, 104. Thus, the ALJ's consideration of this evidence implicitly included not only an assessment of the effects of Plaintiff's obesity on her

6

ability to function, but also an explanation of how she reached her conclusions. Based on the ALJ's discussion of Plaintiff's testimony, the medical evidence, and the medical source opinion evidence in reaching the RFC determination, the Court finds the ALJ sufficiently explained her reasons for concluding that Plaintiff's obesity caused no limitations in excess of the RFC. *See Archie D. F. v. Saul,* No. 20-CV-52-CDL, 2021 WL 1348264, at *9 (N.D. Okla. Apr. 12, 2021) (finding no error in evaluating obesity where "the ALJ considered 'the entire record,' including Plaintiff's obesity," and relied on a medical source opinion "which noted Plaintiff's obesity and instances of elevated BMI" as support for the RFC assessment).

More importantly, Plaintiff does not point to any evidence indicating that her obesity, alone or in combination with her other impairments, results in functional limitations that would prevent her from performing light work with the climbing and environmental limitations set forth in the RFC. Significantly, Plaintiff did not identify obesity as disabling impairment on the disability reports she submitted as part of her application for benefits and none of her medical sources identified functional limitations caused by her obesity. R. 210-24, 252-60. At the administrative hearing, Plaintiff reported her height and weight in response to questioning by the ALJ, but she did not testify that obesity adversely affected her other impairments, exacerbated her pain or other symptoms, or resulted in any functional limitations. R. 39-73. Because the ALJ sufficiently considered Plaintiff's obesity throughout the sequential evaluation process and because Plaintiff failed to meet her burden of proving that her obesity imposes additional functional limitations on her ability to work, the ALJ did not err in evaluating Plaintiff's obesity. *See Jimison ex rel. Sims v. Colvin*, 513 F. App'x 789, 798 (10th Cir. 2013) (finding no error in ALJ's obesity analysis where there was "no record indication of any functional limitations from [the claimant's] obesity or of any impairments possibly caused or exacerbated by her obesity that are inconsistent with the

RFC"); *Rose v. Colvin,* 634 F. App'x 632, 637 (10th Cir. 2015) (affirming where the ALJ identified obesity as a severe impairment and included postural limitations in the RFC without discussing obesity, but the claimant failed to provide evidence that her obesity resulted in functional limitations).

> B. ALJ's Off-Task Limitation is Supported by Substantial Evidence

Plaintiff asserts the ALJ's RFC finding that Plaintiff would be off task no more than ten percent of the workday is not supported by substantial evidence. Plaintiff specifically argues the ALJ failed to explain how she determined Plaintiff would be off task no more than ten percent of the workday, and that the evidence demonstrates Plaintiff would be off task at least twenty percent of the workday.

"'The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) (quoting SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)). An ALJ's decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Grogan,* 399 F.3d at 1261-62 (cleaned up). However, where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, and "can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1166 (10th Cir. 2012).

The Court finds the ALJ's off-task limitation is supported by substantial evidence. As with Plaintiff's obesity, the ALJ thoroughly summarized Plaintiff's testimony and the medical evidence related to Plaintiff's chronic fatigue, sleep apnea, and mental impairments in the RFC discussion. R. 22-31. The ALJ noted Plaintiff's testimony that she has difficulty initiating and maintaining sleep without sleeping medication; naps at least once per day for between two and four hours;

8

sometimes has difficulty with concentration; and that her mental health medications are helpful, but do not "eliminate everything." R. 24. In discussing the treatment notes of Bruce Peixotto, a nurse practitioner with Counseling and Recovery Services of Oklahoma, the ALJ noted Plaintiff began taking an antidepressant medication two weeks prior to her initial visit with Mr. Peixotto in October 2019. R. 27. The ALJ then thoroughly discussed Mr. Peixotto's examination findings through July 2020, which is his last treatment note in the record. R. 27-29. The ALJ specifically noted Mr. Peixotto's normal mental status examinations, his consistent finding that Plaintiff's attention span and concentration were adequate, as well as his findings in January, April, and July 2020 that he identified no issues with Plaintiff's sleep. *Id.* The ALJ then concluded that Mr. Peixotto's examination findings were not inconsistent with the limitations in the RFC. *Id.* Additionally, the ALJ discussed nurse practitioner Kimberly Wilson's October and November 2019 treatment notes, including her normal mental status examination findings and Plaintiff's reports of persistent fatigue, but improved depression and anxiety. R. 28. The ALJ then concluded Plaintiff's reports and Ms. Wilson's treatment notes did not support functional limitations that exceeded the RFC. *Id.*

As part of her analysis of the medical opinion evidence, the ALJ considered Dr. James Ross' August 2018 and July 2020 opinions that Plaintiff was unable to work and may need disability. R. 30, 346, 555. The ALJ noted Dr. Ross did not provide any specific functional limitations or consider whether Plaintiff could perform other work. R. 30. She then found Dr. Ross' statements were not supported by the medical evidence of record and were inconsistent with Ms. Wilson's treatment notes. *Id.* Next, the ALJ summarized Dr. William Berman's September 2020 letter and found his opinion that Plaintiff's past trauma and current medical conditions rendered her disabled and unable to sustain was unpersuasive. R. 31. In reaching this conclusion,

9

the ALJ noted that Dr. Berman had not treated Plaintiff in over two years before completing his letter; that his opinion on Plaintiff's disability was an issue reserved solely for the Commissioner; and that his opinion was inconsistent with Plaintiff's treatment record, including Ms. Wilson's November 2019 treatment note and the evidence from Counseling and Recovery Services of Oklahoma. *Id.* Lastly, the ALJ discussed Dr. Mary Anne Bennett's October 2020 letter wherein she indicated that Plaintiff's health issues had not improved to the point that working fulltime was feasible. *Id.* Because Dr. Bennett was Plaintiff's friend and because the medical record, including the treatment notes of Ms. Wilson and Mr. Peixoto, did not support the finding that Plaintiff was unable to work, the ALJ found Dr. Bennett's opinion unpersuasive. *Id.*

Plaintiff contends the ALJ failed to sufficiently explain her determination that Plaintiff would be off task no more than ten percent of the workday. As an initial matter, Plaintiff interprets the ALJ's off-task limitation to mean that Plaintiff would be off task *at least* ten percent of the workday, but this is not borne out in the ALJ's decision. Rather than identifying a fixed percentage of time that Plaintiff would be off task, the ALJ found Plaintiff would be off task *no more than* ten percent of the workday. In other words, the ALJ determined that Plaintiff's impairments limited her ability to stay on task, but not significantly enough to be considered disabling. Contrary to Plaintiff's assertion, this conclusion is supported by substantial evidence in the record.

At the administrative hearing, the ALJ asked the VE for her opinion as to how much an individual could be off task and still maintain work, and the VE responded by saying "[u]p to 15%." R. 71. After thoroughly considering Plaintiff's testimony, the medical records, and the medical source opinion evidence, and explaining why such evidence did not support limitations in excess of the RFC as set forth above, the ALJ adopted the state agency physician's November 14, 2019, opinion regarding Plaintiff's mental limitations but added the additional limitation that

10

Plaintiff would be off task no more than ten percent of the workday. R. 30. The ALJ then explained she found Plaintiff more limited than the state agency physician did due, in part, to the medical evidence received after he issued his opinion. *Id.* The Court notes the medical evidence of record dated after November 14, 2019, largely consists of treatment notes from Ms. Wilson and Mr. Peixotto relating to Plaintiff's mental impairments. R. 528-43, 554-75. Thus, the Court can follow the ALJ's reasoning that Plaintiff's ability to stay on task was limited but not disabling and can determine that the ALJ applied the correct legal standards. Accordingly, the ALJ's decision is supported by substantial evidence. *See Keyes-Zachary,* 695 F.3d at 1166 ("In conducting our review, we should, indeed must, exercise common sense. The more comprehensive the ALJ's explanation, the easier our task; but we cannot insist on technical perfection.").

Moreover, Plaintiff does not point to any evidence indicating that she would be off task more than ten percent of the workday. Although Plaintiff asserts the medical evidence, including the letters from Drs. Ross, Berman, and Bennett, supports a finding that she would be off task at least twenty percent of the workday, she does not challenge the ALJ's analysis of these medical source opinions or identify any evidence the ALJ failed to consider. Rather, Plaintiff simply offers an alternative interpretation of the evidence that favors her disability claim. Such assertions amount to a request that the Court reweigh the evidence, which it cannot do. *See Hackett*, 395 F.3d at 1172 ("We consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but we will not reweigh the evidence or substitute our judgment for the Commissioner's.") (cleaned up).

Plaintiff's reliance on *Lanigan v. Berryhill,* 865 F.3d 558 (7th Cir. 2017), is misplaced and unpersuasive. Unlike the Plaintiff in *Lanigan,* who presented evidence that he would be off task more frequently than identified by the ALJ, no such evidence exists in the instant case.

*Cf. Lanigan,* 865 F.3d at 563-64 (finding ALJ's off-task limitation not supported by substantial evidence, in part, because the ALJ improperly rejected the claimant's "unrebutted testimony" as to unscheduled breaks at his part-time job, and the opinion of claimant's counselor, which corroborated claimant's "own account of serious difficulties with concentration."). In fact, as the Commissioner points out, the ALJ's off-task limitation is more restrictive than any medical source opinion in the record directly addressing Plaintiff's attention and concentration. Accordingly, any error the ALJ may have made with respect to Plaintiff's off-task limitation would be considered harmless. *See Higbee v. Colvin,* No. 1:14CV00064, 2015 WL 803129, at *1 (D. Utah Feb. 26, 2015) (finding harmless error where no medical source identified the ALJ's RFC limitation of being off task up to fifteen percent of the workday because such limitation imposed greater restrictions than the evidence reflected and was in Plaintiff's favor) (citing *Wallick v. Astrue,* No. 06-1346 MLB, 2007 WL 4239463, at *5 (D. Kan. Oct. 9, 2009)).

**V.     Conclusion**

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED.**

**SO ORDERED** this 29th day of June, 2022.

_____
**JODI F. JAYNE, MAGISTRATE JUDGE
UNITED STATES DISTRICT COURT**